## RIVERS v. WESTBROOKS et al.

### No. 8781.

Court of Civil Appeals of Texas. Austin.

March 1, 1939.

Rehearing Denied March 22, 1939.

Paul D. Page, of Bastrop, and Webb & Webb, of Elgin, for appellant.

Robert B. Thrasher, of Austin, for appellees.

BAUGH, Justice.

Appellant, as plaintiff, brought this suit against appellees, as defendants, for debt and to foreclose a vendor's lien on 45⅓ acres of land in Bastrop County. The defendants answered pleading limitation against the notes; that the transactions out of which they were executed were simulated for the purpose of placing a mortgage on the homestead of Greely Westbrooks and wife; and prayed for cancellation of the lien and judgment for title to the lands. The plaintiff, by supplemental petition, pleaded estoppel against defendants; ratification of the original transaction by renewal and extension of the debt and lien; that the transaction out of which the notes were executed was bona fide; and that plaintiff was an innocent purchaser in good·faith for a valuable consideration. Trial was to a jury on one special issue in answer to which they found that the transaction in question was for the purpose of placing a mortgage on the homestead. The court thereupon rendered judgment in favor of plaintiff for his debt, denied him foreclosure of his asserted lien, and cancelled same as a cloud upon defendants' title; hence this appeal.

The material facts are substantially as follows: The appellant, Roy D. Rivers, was a merchant in the town of Elgin. During 1925 he had furnished supplies and merchandise to Greely Westbrooks, a negro farmer, who owned the land here involved and with his wife and children had for many years occupied and used it as their homestead. Because of the drouth and crop failure of 1925, Greely Westbrooks had been unable to pay Rivers what he owed him and in the fall of 1925 Rivers told him that he could not extend credit to him for another year unless Greely furnished him security. The only security Greely could furnish was his homestead, and Rivers told him that he could not mortgage that. According to Greely's testimony, contradicted by that of Rivers, the latter told Greely that he could sell his land to his brother, Bill Westbrooks, a single man, who could execute him notes therefor, and that he, Rivers, would purchase some of the notes.

On December 26, 1925, Greely and Bill went to the office of an attorney in Elgin who drew a deed from Greely and wife, Viola, to Bill, to their homestead, in consideration of the execution by Bill to Greely of 10 vendor's lien notes, recited as the entire consideration; notes 1 and 2 being for $325 each, secured by a prior lien on the land, due in one and two years thereafter; the other 8 notes being for $200 each and due one each year from 1928 to 1935. On the same day, and as a part of the same transaction, Greely executed an assignment of notes 1 and 2, the ones here involved, to Rivers, who marked Greely's account with him, then amounting

to a little more than $100, paid, and credited Greely on his books with the balance. No money was paid. It is not clear whether Viola signed the deed in the attorney's office or at their home; nor whether Bill executed the notes in the attorney's office or out at the farm. It seems that the attorney retained both the deed and the transfer of the notes and had them recorded. Rivers paid the attorney for his services and the recording fees. The negroes both testified that neither of them paid out or received any money. What became of the other 8 notes does not appear. Greely testified that he never had them, and Bill testified that he had never paid them nor been asked to pay them. It is not controverted that Greely and his wife then and at all times thereafter continuously used and occupied said premises as their homestead and that Bill never claimed title thereto.

In October, 1933, at the instance of Rivers, Bill, Greely, and Viola Westbrooks all joined in a renewal and extension of said 2 notes and lien and executed a new note for $703.93, due October 19, 1934, being the note herein sued upon.

The issue submitted to the jury was as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that at the time of the execution of the deed in evidence, there was an agreement entered into between the plaintiff, Roy D. Rivers, and all of the defendants, Greely Westbrooks and wife Viola Westbrooks, and Bill Westbrooks by the terms of which agreement the defendants, Greely Westbrooks and wife, Viola Westbrooks, were to convey the property in question to the defendant, Bill Westbrooks, for the sole purpose of creating a mortgage lien against said property, which was the homestead of the defendants, Greely Westbrooks and wife, Viola Westbrooks, for the benefit of the plaintiff, Roy D. Rivers, and that said deed was not intended to convey title to the land?"

The jury answered this question "Yes."

█ It is unnecessary to set out or summarize the testimony here. There was a conflict between that of appellant, and his attorney who drew the original papers, on the one hand; and that of the old negroes involved on the other; suffice it to say that the testimony of the latter, when taken in connection with the undisputed facts and circumstances then known to Rivers, and with Rivers' own testimony, was amply sufficient to sustain the jury's finding.

█ Nor were the appellees either by said deed, or by the execution of the renewal and extension of said notes, estopped to assert their homestead rights. The case of Eylar v. Eylar, 60 Tex. 315, and numerous cases subsequently following the rule there announced do not apply here. If Rivers had purchased said notes as an innocent purchaser for value, without knowledge that the deed in question was but simulated and a subterfuge to evade the homestead laws, the mere fact that Greely Westbrooks and wife continued to occupy said premises thereafter as their homestead, would not bar him from a foreclosure of his lien. But no such case is here presented. On the contrary the jury found that Rivers himself was a party to the scheme to circumvent the homestead exemption laws and the attempt to create such a lien thereon in the manner stated. This rendered the asserted lien void from its inception.

█ Consequently the renewal and extension of the notes in 1933 gave such lien no more vitality than did the original transaction. Under the undisputed facts, and the finding of the jury, the asserted lien was void under Art. 16, § 50, of the Constitution, Vernon's Ann.Civ.St., and Art. 3832, R.C.S. Vernon's Ann.Civ.St. art. 3832. And as stated by the Commission of Appeals in Rich v. Walker Smith Co., 57 S.W.2d 1098, "That which the Constitution declares void cannot be made valid by agreement of the parties." See also Collier v. Valley Building & Loan Ass'n, Tex.Com.App., 62 S.W.2d 82; Vogel v. Zipp, Tex.Civ.App., 90 S.W.2d 668.

Appellant cites us to numerous cases holding that where a maker who renews an obligation which was originally subject to a defense of fraud, failure of consideration, etc., by such renewal ratifies the original transaction and waives his right to plead such defense to the renewal note. See J. B. Colt Co. v. Ellis, Tex.Civ.App., 293 S.W. 629; Braxton v. Haney, Tex. Civ.App., 82 S.W.2d 984. This rule would apply had appellees set up such defense to the debt sued upon; but manifestly could not operate to make valid a lien on the homestead made void by the Constitution itself.

██ Appellant next complains of the failure of the court to submit to the jury

the issue of estoppel of appellees to assert their homestead exemption. The only objections made to the charge as given were: (1) That the testimony was not sufficient to authorize the submission of any issue to the jury; (2) that the Westbrooks were estopped to deny the validity of the deed in question; and (3) that "the charge of the court is erroneous and should not submit the issue to the jury as set forth in his charge." The third is manifestly too general to be considered; and the first and second are, in effect, merely requests for a peremptory instruction to find for the plaintiff. The charges requested by appellant were as follows: One and two for a peremptory instruction, the latter, because of estoppel of appellees to deny that the sale of their homestead was valid; three, whether Rivers knew at the time that "the transaction was for the purpose of borrowing money and was not a real sale of the land"; four, whether an agreement was made by and between all three of the defendants that a pretended sale was to be made for the purpose of borrowing money on the land in question; and, fifth, whether Rivers knew at the time he purchased the notes that the sale was intended only as a mortgage to borrow money on the land. It is manifest, we think, that all of these matters were embodied in the charge as given. It is not controverted that the land in question was the homestead of Greely and Viola Westbrooks and that Rivers knew this fact. Nor was there any dispute as to the conveyance, the execution of notes 1 and 2, and their assignment to Rivers. As between Bill and Greely Westbooks it was conclusively shown that the transaction was not bona fides. The only question presented, therefore, for jury determination, was whether Rivers knew this fact.

■■ Appellant next contends that the issue as submitted was not supported by appellees' pleading in that they did not allege an agreement between appellant and all of the appellees. This contention is not sustained. While appellees did not allege that Bill Westbrooks was a party to the agreement they did allege that an agreement was made between appellant and Greely and Viola Westbrooks pursuant to which they executed the deed and Bill executed the notes. No objection was made by appellant to the charge given on the ground that it was not supported by the pleadings, and the objections made, as hereinabove stated, were clearly not suffi-

cient to call the court's attention to the defect, if such there was, here now complained of, and to give the trial court an opportunity to correct it. It cannot therefore be here urged on appeal. See City Inv. & Loan Co. v. Wichita Hdw. Co., 127 Tex. 44, 91 S.W.2d 683; 41 Tex.Jur., § 252, p. 1063. But if erroneous, it was manifestly harmless. Whether Bill Westbrooks was a party to such agreement or not avails appellant nothing. The homestead rights asserted vested in Greely and Viola Westbrooks and the agreement between them and Rivers was sufficient to render the attempted lien void, whether Bill Westbrooks was a party to that agreement or not. He was a party to the attempt to carry it out.

What we have said above applies with equal force to the contention that the agreement found by the jury,—that is, between plaintiff and all of the defendants, —was not supported by the evidence. While the testimony adduced, taken in connection with surrounding facts and circumstances, was we think sufficient to sustain the jury's finding; even if the agreement had been made between Rivers and Greely Westbrooks only, the result so far as Rivers is concerned would be the same. Bill Westbrooks does not claim to be an innocent purchaser.

■ Appellant also urges as error failure of the trial court to define the term "mortgage lien." No objection to the charge was made on that ground, and no request made to define it, if indeed it requires definition. The same is true of the contentions here made that the issue as submitted was multifarious. No objection was made to the charge on that ground. While the statute, Art. 2189, requires the trial court to submit special issues separately and distinctly and to define legal terms, it does not relieve the party complaining from the duty of making proper objections to the charge so as to enable the trial court to correct such charge, if erroneous. It does not follow, however, that a grouping of separate and distinct facts in a special issue renders it multifarious. Especially is this true where the concurring facts are not disputed, or are merely elements of the ultimate fact to be determined. In such case grouping may not only be permissible but indispensable. 41 Tex.Jur., § 276, p. 1108; Speers Special Issues, § 187, p. 243. Such a case is, we think, here presented. There was little or

no controversy as to what actually occurred,—the only real issue being as to what was their purpose. It was conclusively shown that as between Greely and Viola Westbrooks, who executed the deed, and Bill Westbrooks, who executed the notes, the transaction was not a bona fide sale of the homestead. The only real issue was, therefore, whether Rivers had knowledge of this fact and that the transaction was but a subterfuge or simulated one for his benefit. The jury found upon competent evidence that he had agreed to it, which finding was, of course, conclusive on the only controverted issue presented.

Appellant also complains of the failure of the trial court to submit special issues 3, 4 and 5 requested by him and hereinabove stated. There was no error in this. The matters so inquired about were sufficiently covered in the charge as given and it was not necessary to submit them in another form.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.